UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUDOLPH LANGE,

    Plaintiff,

v.

JOHN DEROUSSE,

    Defendant.

CASE NO. C08-1444-JCC-JPD

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Rudolph Lange brings this action under 42 U.S.C. § 1983 to allege a violation of his constitutional rights during his apprehension and arrest by defendant John DeRousse on March 2, 2006. Defendant DeRousse now moves for summary judgment. Plaintiff, despite having been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), has filed no response to defendant's motion. Following a careful review of defendant's motion, and the balance of the record, this Court concludes that defendant's motion for summary

REPORT AND RECOMMENDATION
PAGE - 1

judgment should be granted, and that plaintiff's second amended complaint[1] and this action should be dismissed with prejudice.

## FACTUAL BACKGROUND

On March 2, 2006, at 0043 hours, Snohomish Police Officer Marcus Dill was dispatched to a report of a suspected car prowl at 401 1st Street in Snohomish, Washington. (Dkt. No. 43, Ex. A at 4.) When Officer Dill arrived at the scene, which was apparently the parking lot of an apartment complex, he observed two males on the east side of the lot using flashlights to look inside vehicles and trying the door handles of the vehicles. (*Id*.) Officer Dill then watched the two males move to the north side of the parking lot where he lost sight of them. (*Id*.)

After two other officers arrived at the scene, Officer Dill pulled his patrol car into the parking lot and activated his emergency equipment. (*Id*.) The two males whom Officer Dill had previously seen with flashlights crouched down and tried to hide behind a black vehicle. (*Id*.) Officer Dill ordered the men to the ground. (*Id*.) One of the men complied and was taken into custody. (*Id*.) The other man fled the scene on foot. (*Id*.)

When Officer Dill subsequently returned to his patrol car, he observed that two vehicles in the parking lot had their engines running. (*Id*.) Officer Dill looked inside the vehicles and noticed that the ignitions had been "punched" and the vehicles appeared to have been "hot-wired." (*Id*.) Officer Dill ran the license plates of the two cars and both returned clear (*i.e.*, not stolen). (*Id*.) Officer Dill also ran the license plate of a third vehicle, a Toyota Camry, and was advised that the Everett Police Department was reporting that vehicle as stolen. (*Id*.) Officer Dill felt the hood of the Camry and it

---

[1] Plaintiff filed a proposed third amended complaint in this action in April 2009. (*See* Dkt. No. 28.) However, plaintiff never requested leave of court to file that complaint and, thus, plaintiff's second amended complaint (Dkt. No. 9) is the complaint at issue here.

REPORT AND RECOMMENDATION
PAGE - 2

was warm to the touch. (Dkt. No. 43, Ex. A at 4.) Snohomish Police Sergeant Rutherford, one of the two officers who arrived on the scene after Officer Dill, requested a K-9 unit because it appeared as though they had interrupted a vehicle theft. (*Id.*)

Sergeant John DeRousse, a K-9 handler with the Everett Police Department, responded to the scene with his canine KJ. (Dkt. No. 41, Ex. A at 2.) Sgt. DeRousse and KJ arrived at the scene at approximately 0106 hours and contacted Officer Dill who pointed out the three vehicles which officers believed to have been stolen. (*Id.*) Officer Dill also advised Sgt. DeRousse that one of the suspects had run from one of the cars to the corner of the apartment building where he jumped a fence and fled out of sight in the direction of a residential area. (*Id.*)

After evaluating the information received from Officer Dill, Sgt. DeRousse determined that it was appropriate to attempt to apprehend the suspect who had been observed running from the scene. (*Id.*) Sgt. DeRousse placed KJ in his tracking harness and led him to the vehicle where the suspect was last seen. (*Id.*) Sgt. DeRousse gave KJ a tracking command, KJ "imprinted" the scent, and then KJ began tracking westbound through the parking lot. (*Id.*) KJ tracked to the edge of the apartment complex and then through a heavily brambled area on the other side of the fence where Officer Dill had seen the suspect running. (*Id.*, Ex. A at 3.) KJ tracked in a westbound direction through a large pasture, underneath a train trestle, through a creek, and onto a residential property. (*Id.*) Once on the residential property, KJ tracked through a carport and over a brick retaining wall before entering a small wooden box where he made contact with an individual who was hiding in the box. (*Id.*) That individual was later identified as plaintiff. (*Id.*) The box where plaintiff was found hiding was 2'x3'x5' in size and appeared to Sgt. DeRousse to be some type of animal pen. (*Id.*)

REPORT AND RECOMMENDATION
PAGE - 3

KJ first made contact with plaintiff on his left side above his left buttock, and Sgt. DeRousse instructed plaintiff to show his hands and to lie down on the ground. (Dkt. No. 41, Ex. A at 3.) Plaintiff did not comply but, instead, pushed KJ off of him. (*Id*.) KJ immediately re-engaged, this time grabbing plaintiff by the left wrist. (*Id*.) Plaintiff continued to ignore Sgt. DeRousse's orders to stop fighting with the dog and to lie down. (*Id*.) Plaintiff attempted to kick KJ off the contact with his right foot and KJ grabbed plaintiff's right shin and pulled him out of the box. (*Id*.) Once plaintiff was in full view and Sgt. DeRousse could confirm that plaintiff was no longer fighting and that his hands were empty, Sgt. DeRousse physically and verbally took KJ off the contact. (*Id*.) Sgt. DeRousse estimates that KJ was in contact with plaintiff for about 20 seconds. (*Id*.)

Plaintiff was subsequently transported to the Snohomish Police Department where he was evaluated by the Snohomish County Fire Department before being transported to the hospital for further evaluation. (*See* Dkt. No. 43, Ex. A at 5.) Plaintiff's injuries consisted of minor scratches on his left side and left wrist, and a laceration on his right shin which was approximately two inches long and an inch deep. (Dkt. No. 41, Ex. A at 3.) The laceration was examined and cleaned at the hospital and plaintiff was thereafter deemed fit for booking. (*Id*.)

Plaintiff subsequently entered a guilty plea in Snohomish County Superior Court to a charge of second degree possession of stolen property which arose out of his actions on March 2, 2006. (*See* Dkt. No. 44 at 11-17.)

## DISCUSSION

Plaintiff alleges in his second amended civil rights complaint that Sgt. DeRousse failed to properly control his canine when apprehending plaintiff on the night of March 2, 2006. (Dkt. No. 9 at 4-5.) He further alleges that he sustained permanent mental and physical injuries as a result of Sgt. DeRousse's alleged misconduct. ((Dkt. No. 9 at 4-5.) Plaintiff does not specifically allege in his

REPORT AND RECOMMENDATION
PAGE - 4

second amended complaint any violation of his federal constitutional rights. However, based on the facts alleged by plaintiff, the Court construes plaintiff's second amended complaint as presenting a claim that Sgt. DeRousse used unnecessary force in effectuating his arrest. Sgt. DeRousse argues in his motion for summary judgment that he used a reasonable amount of force to arrest plaintiff and that plaintiff's claim should therefore be dismissed with prejudice.

## Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. Material facts are those which might affect the outcome of the suit under governing law. *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the non-moving party. *Id*. at 248. The court may not weigh the evidence or make credibility determinations. *Id*.

## Excessive Force

The standard for analyzing claims of excessive force was established by the Supreme Court in

REPORT AND RECOMMENDATION
PAGE - 5

*Graham v. Connor*, 490 U.S. 386 (1989). *Graham* instructs that such claims are to be evaluated under the Fourth Amendment's reasonableness standard: "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (citation omitted).

The Court cautioned that reasonableness must be assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 397. The Court made clear that proper application of the reasonableness standard requires careful consideration of the specific facts and circumstances of each individual case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The Ninth Circuit has refined this standard somewhat. Specifically, the Ninth Circuit has made clear that when evaluating a claim of excessive force, the first step must be assessment of "the quantum of force used." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007). This is so "because the factors articulated in *Graham*, and other factors bearing on the reasonableness of a particular application of force are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure." *Id.* (internal quotation and citation omitted).

While a canine is certainly capable of inflicting serious injury, *see e.g. Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003), the record before this Court reflects that the amount of force used against plaintiff was moderate. KJ, the canine, "contacted" plaintiff three times in a period of approximately 20 seconds. The record demonstrates that the reason for the multiple contacts was that

REPORT AND RECOMMENDATION
PAGE - 6

plaintiff struggled with the KJ instead of complying with Sgt. DeRousse's repeated verbal orders to show his hands and lie down on the ground. The first two contacts resulted in minor scratches to plaintiff's left side and left wrist. The third contact resulted in a laceration to plaintiff's right shin. This more serious injury was apparently sustained after plaintiff kicked KJ in the face and dislodged his bite. When KJ re-engaged, he bit and held plaintiff's leg and dragged him out of the box where he had been hiding. Once plaintiff was out of the box, and Sgt. DeRousse could see that he was no longer fighting and that his hands were empty, Sgt. DeRousse ordered KJ to disengage and KJ immediately obeyed the command.

The Court next turns to the specific factors cited in *Graham* in order to assess whether the governmental interests at stake justify the amount of force used. The first factor is the severity of the crime at issue. Plaintiff was suspected of being involved in one or more car thefts. While car theft is a felony offense, it is not necessarily a violent crime. However, according to Sgt. DeRousse, car thieves typically carry screw-drivers or other tools that can be used as weapons, and officers had no information about whether the fleeing suspect was armed. Given the lack of information as to whether plaintiff might have been armed, in combination with the knowledge that the criminal activity plaintiff was engaged in would typically involve the use of tools which might be used as weapons, the situation posed sufficient danger to warrant the use of force.

The second factor is whether plaintiff posed an immediate threat to the safety of the officers or others. The Ninth Circuit has held that this factor is the most important of the three specific factors identified in *Graham*. *See Chew v. Gates,* 27 F.3d at 1441. Again, officers had no information as to whether the fleeing suspect; *i.e.*, plaintiff, may have been armed and had a reasonable suspicion that he might be. The search and apprehension occurred in the early hours of the morning when it was dark and plaintiff had secreted himself in a small space thereby precluding

REPORT AND RECOMMENDATION
PAGE - 7

Sgt. DeRousse from making a visual determination as to whether plaintiff possessed any weapons or posed any other sort of risk. Under these circumstances, it is reasonable to conclude that plaintiff posed an imminent threat to officer safety.

The third factor is whether plaintiff was actively resisting arrest or attempting to evade arrest by flight. The evidence submitted by defendant demonstrates that plaintiff was doing both. Plaintiff initially fled from police when he was spotted at the scene of the offense and was ordered to get on the ground. Once plaintiff was located by KJ, plaintiff failed to comply with Sgt. DeRousse's commands to lie down and show his hands, and he actively resisted by fighting with KJ. Once plaintiff was pulled from his hiding place, and had stopped resisting, Sgt. DeRousse immediately pulled KJ off the contact.

The evidence presented by Sgt. DeRousse in support of his motion for summary judgment amply demonstrates that each of the three factors identified in *Graham* weigh in his favor. Plaintiff has made no effort to rebut any of the evidence presented by Sgt. DeRousse. Accordingly, Sgt. DeRousse is entitled to judgment as a matter of law with respect to plaintiff's excessive force claim.

## CONCLUSION

For the foregoing reasons, the Court recommends that Sgt. DeRousse's motion for summary judgment be granted and that plaintiff's second amended complaint, and this action, be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 19th day of November, 2009.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge